## ORANGE HAT BOX CO. v. FERRY–HALLOCK CO.

(Circuit Court of Appeals, Third Circuit.    February 16, 1912.)

No 1,554.

PATENTS (§ 328*)—INFRINGEMENT—HAT PACKING RING.

> The Ferry patent, No. 574,894, for a hat packing ring, made of pasteboard and having a hollow closed bead on either edge, construed, and *held* not infringed by a ring having its edges merely turned over and folded down flat against itself.

Appeal from the Circuit Court of the United States for the District of New Jersey

Suit in equity by the Ferry-Hallock Company against the Orange Hat Box Company.    Decree for complainant, and defendant appeals. Reversed.

The following is a cut of the patent in suit.

Louis M. Sanders, for appellant.

J. Edgar Bull (Charles S. Jones, on the brief), for appellee.

Before GRAY and BUFFINGTON, Circuit Judges, and YOUNG, District Judge.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

GRAY, Circuit Judge. The appeal in this case is from a decree of the court below (185 Fed. 816) in a suit brought by the appellee, as complainant, against the appellant as defendant. The bill of complaint charges infringement by the defendant of letters patent No. 574,894, granted to Frank P. Ferry and to Theodore Clark & Co., as the assignee of a one-half interest, on January 12, 1897, and prays for an injunction and for an accounting of damages. The answer is in the usual form, denying the validity of the patent by reason of anticipation and lack of patentable novelty, and also denying infringement. The decree of the court below held the patent to be good and valid in law, and that the claims thereof had been infringed by the defendant. The invention of the patent is thus described in the specifications:

"My invention has reference to certain new and useful improvements in hat packing rings, with the end in view that such rings shall support the brims of the hats and snugly conform to the crowns thereof, and shall present at all points of contact a perfectly smooth surface with no chafing edges, while at the same time the strips from which the rings are formed may be packed for shipment in a very small space.

"Referring to the accompanying drawings, Figure 1 is a perspective illustrating a strip of pasteboard constructed and formed in accordance with my improvement preparatory to being shaped into a ring; Fig. 2, a perspective of a ring formed from such strip, showing the curled edges of such ring on the outside thereof; Fig. 3, a detail section at the line x x of Fig. 2; Fig. 4, a perspective similar to Fig. 2, but showing the curled edges on the inside of the strip; and Fig. 5, a detail section at the line y y of Fig. 4.

"Similar numbers of reference denote like parts in the several figures of the drawings.

"In carrying out my invention I take a piece of pasteboard 1 of any suitable width and length and curl over the opposite edges, as shown at 2 3, to form hollow beads 4 5, a surplus from such edges being left to form petticoats 6 7, which latter lie closely against the body of the strip.

"The object of the petticoat portions 6 7 is to give stability to the beads 4 5 and to prevent them from crawling back and also give them greater body and flexibility.

*    *    *    *    *    *    *    *    *    *

"The hollow bead affords great advantages in that it is not stiff and unyielding, but is flexible and resilient, while its shape is preserved by reason of the petticoats 6 7, which, as above set forth, snugly lie against the body of the strip."

The device of the patent in suit, though simple in construction and modest in function, has, among other and older devices for the same purpose, proved its usefulness, and, owing to the speed and economy with which these rings can be turned out on an elaborate machine specially devised and patented for that purpose, has doubtless proved a commercial success. Hat rings or bands of appropriate width, made of pasteboard, into which the crowns of hats can be set when nesting them in boxes for transportation, were of common use long prior to the patent in suit. The use was one which would readily suggest itself for the purpose of preventing abrasion of the crowns of the hat, and supporting them from the underside of the brims. It was, of course, an obvious device, and one that called for no exercise of the inventive faculty, nor did it require the inventive faculty to perceive that the raw edges of pasteboard, which would have a tendency to abraid the

brims of the hat with which they came in contact, might be so protected as to avoid such abrasion. Accordingly, we find that in the prior art, the folding of pieces of cloth or flannel over the edges of these pasteboard bands was early resorted to for that purpose. This requiring the use of other and different material, produced a somewhat clumsy structure, which cost time and trouble. The patentee of the patent in suit had previously devised hat packing rings, for which he obtained letters patent No. 444,343 (January, 1891). In the specification of this patent, he says that his invention consists of a ring of a general cylindrical shape to contain the hat crown, the edges of said ring being curled outwardly so as to present a perfectly smooth unbroken surface for contact with the crown and brim of the hat. This was in reality an unclosed hollow bead, which served the purpose of presenting a resilient or cushion top and bottom to the ring, and must have successfully prevented abrasion of the hats. This and other devices described in prior patents, such as the House patent, the Newman patent, and the Glacier patent, and others, which were cited by the defendant below as showing invalidity by reason of anticipation, certainly confined the invention of the patent in suit within narrow limits.

The improvement of the patent in suit on the prior art, and especially on the device of the patentee's former patent, according to the statement of its specifications, was to curl over sufficient of the edge of the pasteboard strip to make a closed instead of an unclosed hollow bead, with enough of the margin, after closing the bead, to lie flat and close against the body of the strip, thereby giving increased thickness and stability to the edge and also serving to hold the hollow bead in place. Whatever improvement this was upon the prior device, and it may be conceded that there was such improvement, there was no invention in simply turning over a small portion of the edge of the strip, in the form of a hem, with or without a hollow bead. The folding over the edge of any material, textile or otherwise, in the form of a hem, and so fastening it to the body of the material as to leave an open space, as in the familiar example of the space left for a drawing string in a bag, or other article, was not necessarily invention, even though the particular method of doing so on the material and for the purposes mentioned in the patent in suit, by machinery devised for that purpose, may have involved invention to a high degree.

Being of opinion that the patent in suit, by reason of the prior art—if art it can be called—is not a pioneer one, but must be confined within the narrow limits called for by the language of its claims and specifications, we turn to the question of infringement, without passing upon the question as to invalidity or patentable novelty.

Taking the first claim of the patent as sufficiently showing the scope of the invention, we read:

"As a new article of manufacture, a hat packing ring, made from a single strip of pasteboard, having hollow closed beads at its upper and lower edges, and petticoats extending from the extremities of such edges after curling flat against the body of the strip, substantially as set forth."

The hollow closed beads are clearly indicated in the drawings which accompany the patent in suit. They are conspicuous, well defined, and, as shown, necessarily characterize the patented product. This hollow closed bead at the bottom and top of the hat packing ring, with its characteristics of flexibility and resiliency, is, without any doubt, the essence of the invention claimed. This clearly appears from the quotations which we have made above from the specifications, in nearly every paragraph of which the hollow bead and its function as a cushion to prevent abrasion by the raw edges of the ring is the salient feature, to which the marginal hem or socalled "petticoats" are subordinate and referred to as giving firmness and stability to the hollow closed bead.

The only other independent function claimed in the specification for the hollow closed bead, with its curled in margin against the body of the ring, is the adjustability of the size of the ring, by its being possible to insert one end of the hollow bead and margin under the other, by reason of the expansibility and contractibility of the formation. We do not find that the defendant's ring, as exhibited in the case, and as the necessary product of the machine upon which it is made, embodies either of the essential features called for by the claims and specifications of the patent in suit. It has its upper and lower edges turned over into what may be called, for want of a better word, a narrow hem, the turned over portion adhering closely to the body of the material throughout its entire width. There is no hollow closed bead produced at the turned over edge, and inspection of the exhibit of defendant's ring produced at the hearing, shows to the eye an utter absence of any hollow portion at the turning of the material. The only thing to be observed, and upon which the complainant's argument for infringement seems to be founded, is that at the turning line or turned edge, there is the slight and almost imperceptible thickening that must accompany the bending and crowding of the fiber of the pasteboard.

While the defendant's ring, by the turning of the margin of the ring flat against itself, does away with the raw edge of the pasteboard and presents instead thereof a comparatively non-abrasive edge, it does not achieve the cushioned resiliency of the hollow bead of the patent in suit and may be in that respect inferior thereto. The so-called "petticoats" depending from the edge, which the complainant's expert finds in the defendant's exhibit, is nothing but the juxtaposition of the parts made necessary by the folding or hem of this or any other material. We find no "superabundance of material, giving a greater bearing surface than would the mere turning over of the material on a knife edge," as was found to be the case by the learned judge of the Circuit Court in Ferry v. Waring Hat Mfg. Co. (C. C.) 129 Fed. 389. There was no suggestion of any hollow bead, or space left at the top edge of the hem, that was collapsible or that could be pressed down upon itself.

The machine upon which defendant's product was made, while necessarily providing for scoring accurately the line of flexure on the dampened material, and in the first turning down avoiding by

a crease in the roller the too sudden flattening out of the texture of the pasteboard at the turning line, likely to cause rupture of the fiber, did, as the last step in the formation of the blank from which the ring was to be made, pass the same through a pair of flat rolls, without crease or recess therein, pressing and flattening the turned over portion of the material throughout its entire breadth. It is little less than absurd to say that defendant's patent could cover this oldest of all methods of doing away with the raw edge of any material, by turning it over and flattening it down upon itself. It goes without saying that the incidental advantage pointed out in the specifications, that "the hollow beads at one end of the strip are readily inserted within the beads at the other end," is not part of the claims and cannot be monopolized when necessarily incident to other structural forms.

In arriving at our conclusions, we are in agreement with Judge Coxe, when speaking of this same patent for the Court of Appeals for the Second Circuit, in the very late case of Ferry-Hallock Co. v. William Herman, 178 Fed. 550, 101 C. C. A. 230, that—

"the essence of the invention is the hollow beads held in place by the broad hem, hugging the strip when the latter is bent to form the ring," and "that the invention of the patent in any view belongs to a restricted field, and the claims are not entitled to a broad construction."

We do not think the grounds upon which Judge Lacombe found infringement in the Waring Case exist in the case here presented. We have the less hesitation, therefore, in arriving at the conclusion that the decree of the court below must be reversed, because it would appear that the learned judge of the court below (Judge Rellstab) seems to have had doubt as to the validity of the patent and to have rested the opinion expressed in his memorandum upon the conclusions arrived at by Judge Lacombe in the Waring Case.

The decree of the court below is hereby reversed, and the case remanded with directions to dismiss the bill.